UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | FILED: JULY 29, 2008 |
| v. | ) | No.  08CV4301 |
| | ) | JUDGE CASTILLO |
| FUNDS IN THE AMOUNT OF ONE | ) | MAGISTRATE JUDGE KEYS |
| HUNDRED SIXTEEN THOUSAND | ) | TG |
| EIGHT HUNDRED DOLLARS | ) | |
| ($116,800.00) | ) | |
| | ) | |
| Defendant. | ) | **JURY TRIAL DEMANDED** |

**VERIFIED COMPLAINT FOR FORFEITURE**

The UNITED STATES OF AMERICA, by PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, for its verified complaint against the above-named defendant property alleges in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure as follows:

1. This complaint for forfeiture is verified by the attached affidavit of Task Force Officer Kevin Ardito of the United States Drug Enforcement Administration ("DEA"), which is fully incorporated herein.

**Jurisdiction and Venue**

2. This is an *in rem* forfeiture action brought pursuant to Title 21, United States Code, Section 881(a)(6), for forfeiture of funds in the amount of one hundred sixteen thousand and eight hundred dollars ($116,800), which funds were furnished and intended to be furnished in exchange for a controlled substance, are the proceeds from the sale of a controlled substance, and were monies used and intended to be used to facilitate narcotics trafficking, in violation of 21 U.S.C. § 801, *et seq*. This court has jurisdiction over this action pursuant to Title 28, United States Code, Sections

1345 and 1355(a).

3. This court has *in rem* jurisdiction over the defendant property pursuant to Title 28, United States Code, Sections 1355(b)(1)(A) and (d), as certain of the acts giving rise to the forfeiture occurred within the Northern District of Illinois.

4. Venue is proper under 28 U.S.C. § 1395(b) because the defendant funds were found and seized within the Northern District of Illinois on March 17, 2008, and shall remain here during the pendency of this action.

## Statutory Authority

5. This forfeiture action *in rem* is brought pursuant to Title 21, United States Code, Section 881(a)(6).

## Specific Allegations

6. On March 17, 2008, DEA agents assigned to the DEA Transportation Interdiction Group at Amtrak Union Station in Chicago, Illinois, screened its passenger manifest and observed the suspicious travel itinerary of Dominique Shaw ("Shaw"). Her one way ticket, from Chicago to Los Angeles, was purchased via credit card issued to a second party. Furthermore, Shaw claimed her ticket less than one hour before the train's departure.

7. At approximately 2:45 p.m. on the same day, DEA law enforcement officers boarded train #3 and located Shaw in room #20 of car #0340. DEA agents identified themselves by displaying their credentials and asked to speak to Shaw. Further, Task Force Officer Kevin Ardito ("TFO Ardito") advised Shaw that she was not under arrest, nor accused of any crime, but that the agents wanted to speak with her. Shaw stated that she understood and agreed to speak with the agents.

8.     TFO Ardito asked to see Shaw's photo identification and train ticket. Shaw produced a State of Illinois Identification card bearing her resemblance and a ticket bearing the name Dominique Shaw for travel from Chicago to Los Angeles. When asked why she was traveling, Shaw told agents that she was traveling for pleasure to visit family in Los Angeles. Agents asked Shaw if she had any other bags besides her carry-on luggage and she replied that she did not.

9.     TFO Ardito asked if she was carrying any weapons, narcotics or large amounts of foreign or United States currency. Shaw stated that she was not in possession of any of the items mentioned. The agents asked if her carry-on bag belonged to her and if she knew of its contents. Shaw answered yes to both questions. TFO Ardito asked Shaw if anyone had asked her to carry or hold anything during her trip to California and Shaw responded negatively. TFO Ardito noticed that Shaw appeared nervous and in response to the questions was stuttering.

8.     Shaw gave consent to DEA agents to search her black suitcase. During the search agents discovered three (3) heat sealed bundles containing a large amount of United States currency. At this time the agents also noticed a very pungent smell of cannabis emanating from the bag. TFO Ardito then asked Shaw why she originally told agents that she did not have a large amount of United States currency. Shaw stated that the money was an inheritance from her father's death. TFO Ardito asked how much money was in the suitcase and Shaw said she had about $52,000.

9.     DEA agents asked Shaw if she would accompany them to the DEA office located in Union Station to continue the interview and she agreed. She also further stated that she has no idea how much money was inside of her suitcase.

10.    Once inside the DEA office, Shaw read and signed a statement of rights form. At this time TFO Ardito asked Shaw if the money was hers. Shaw stated that the money was not hers and

that she was transporting it to Los Angeles for an unknown subject. In substance Shaw proceeded to say that she was asked to transport a bag to Los Angeles. She later received instructions to go to Union Station and claim the ticket waiting in her name. Upon her arrival in Los Angeles, she would be paid upon delivering the suitcase.

11.  Special Agent Robert Glynn ("SA Glynn") responded with his canine "Rudy" and conducted a narcotic odor investigation on the bag containing the currency. SA Glynn advised that "Rudy" gave a positive alert for the presumptive presence of narcotic odor on the seized bag containing the currency. Narcotic detector dog "Rudy" is owned by the DEA and was last certified in December 2007. The DEA certifies narcotic detector dogs every twelve months and has been demonstrated to be reliable.

12.  The currency denominations for the seized currency are as follows: 348 five dollar bills totaling one thousand seven hundred forty dollars ($1,740.00); 712 ten dollar bills totaling seven thousand one hundred twenty dollars ($7,120.00); 2,082 twenty dollar bills totaling forty one thousand six hundred forty dollars ($41,640.00); 604 fifty dollar bills totaling thirty thousand two hundred dollars ($30,200.00); and 361 one hundred dollars totaling thirty six thousand one hundred dollars ($36,100.00), for a total of one hundred sixteen thousand and eight hundred dollars ($116,800) United States currency.

13.  For the reasons stated herein and in the attached affidavit, there is probable cause to believe that funds in the amount of one hundred sixteen thousand and eight hundred dollars ($116,800) were furnished and intended to be furnished in exchange for a controlled substance, are the proceeds from the sale of a controlled substance, and were monies used and intended to be used to facilitate narcotics trafficking, in violation of 21 U.S.C. § 801 *et seq.*, and are therefore subject

to forfeiture and condemnation pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States of America requests:

A. That the defendant property be proceeded against for forfeiture and condemnation, that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed;

B. That the court adjudge and decree that the defendant currency be forfeit to the United States and disposed of according to law; and

C. The United States requests that any trial be before a jury.

                Respectfully submitted,

                PATRICK J. FITZGERALD
                United States Attorney


By:   s/Marsha A. McClellan
       MARSHA A. MCCLELLAN
       DANIEL E. MAY
       Assistant United States Attorney
       219 South Dearborn Street, 5th Floor
       Chicago, Illinois 60604
       (312) 353-5300

State of Illinois    )  
                           )   SS  
County of Cook    )

## AFFIDAVIT

I, Kevin Ardito, having first been duly sworn, upon oath, deposes and states as follows:

1. I am a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA"), Airport Interdiction Group. I have been assigned as a TFO for DEA for approximately one year. I have been specifically assigned to the Airport Interdiction Group, and my official duties and responsibilities include the investigation of narcotics trafficking and narcotics-related offenses at the various points of entry an exit in Chicago, including O'Hare Airport, Midway Airport, the Greyhound Bus Terminal, and Union Station.

2. As a DEA TFO, I am an investigative and law enforcement officer of the United States, permitted by law to conduct investigations of, and to make arrests for, offenses enumerated in the Comprehensive Drug Abuse Prevention and Controlled Substances Act of 1970, Title 21, United States Code, Section 801, *et seq.*

3. I have read the complaint in this matter and the facts alleged are true and correct to the best of my knowledge and belief based upon my own personal knowledge as well as information I have received from other agents, persons and documents. Because this affidavit is for a limited purpose it does not include each and every fact known to me concerning this investigation.

4. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 29 of July, 2008, in Chicago, Illinois.

*[signature]*
KEVIN ARDITO
Task Force Officer
Drug Enforcement Administration

SUBSCRIBED and SWORN to before me this 29 day of July 2008.

*[signature]*
NOTARY PUBLIC

OFFICIAL SEAL
CATHERINE A. MILLER
Notary Public - State of Illinois
My Commission Expires Apr 01, 2012